UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: Perry Moy | ) | Bankruptcy No. 12-B-81564 |
| Debtor. | ) | Adversary No. 12-A-96129 |
| Miriam Moy, Plaintiff | ) | Chapter 13 |
| v. | ) | Judge Lynch |
| Perry Moy, Defendant | ) | |

## MEMORANDUM OPINION

This matter comes before the court on Miriam Moy's Second Amended Complaint to Determine Dischargeability of Debt. Miriam seeks a determination that Perry's obligation under a 2008 Judgment for Dissolution of Marriage to make mortgage payments to McHenry Savings Bank, maintain property insurance and pay property taxes for their former marital residence in which Miriam still resides constitutes a non-dischargeable domestic support obligation. For the reasons set forth herein, judgment will be entered in favor of Debtor-Defendant Perry Moy, finding that Plaintiff Miriam Moy failed to establish that she is owed a debt made non-dischargeable under Section 523(a)(5).[1]

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. The Plaintiff seeks a determination that a debt is excepted from the discharge of debts under the Bankruptcy Code and therefore this is a matter arising under the Bankruptcy Code and

---

[1] Ms. Moy does not allege non-dischargeability under Section 523(a)(15). She asserts and seeks a finding only that this obligation is in the nature of a domestic support obligation that is excepted from discharge under 11 U.S.C. §523(a)(5).

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Because dischargeability actions are "central to federal bankruptcy proceedings," a determination of dischargeability "constitutes a public rights dispute that the bankruptcy courts may decide." *Deitz v. Ford (In re Deitz)*, 760 F.3d 1038, 1039 (9th Cir. 2014) (internal citation omitted); *see also Hart v. Southern Heritage Bank (In re Hart)*, No. 13-6188, 564 Fed. Appx. 773 (6th Cir. Apr. 28, 2014).

## FINDINGS OF FACT AND PROCEDURAL BACKGROUND

On March 14, 2008, approximately four years before Perry Moy filed his Chapter 13 bankruptcy petition, the circuit court of McHenry County entered a Judgment for Dissolution of Marriage (the "Decree"), adopting, approving and incorporating a Marital Settlement Agreement (MSA) between Perry and Miriam Moy. Article Four of the MSA, entitled "Maintenance" states:

> 4.1    HUSBAND shall pay to WIFE the sum of $6,000.00 per month on the first of each month via an electronic deposit into WIFE'S account commencing upon the sale of 8220 Crystal Springs Road. Said sum shall not be included in WIFE'S income and shall not be deductible by HUSBAND from his income for federal and state income tax purposes. If said sum is not paid by the first of each month a late fee of $50.00 per day shall accrue after the seventh of that month. Said sum is non-modifiable for a period of nine (9) years, at which time either party may seek a modification by petitioning the court. HUSBAND shall continue to pay $3,000.00 per month, payable on first of each month as well as maintain payments delineated in paragraph 5.1, until the 8220 Crystal Springs Road real estate is sold. Wife shall be granted the right to stay in the marital home during the period of time that the home is readied for sale pursuant to paragraph 5.1 herein.
> ...
>
> 4.3    The HUSBAND'S obligation delineated in paragraph 4.1 hereinabove shall not be dischargeable by HUSBAND in any bankruptcy proceeding.

(Joint Ex.1, 1-6 to 8 (emphasis in original).) Article Five of the MSA concerns "Real Estate." Paragraph 5.1 of the MSA provides:

> 5.1 The parties are presently the owners in joint tenancy of the improved real property commonly known as 8220 Crystal Springs Road and an adjacent vacant

> lot. The parties stipulate and agree that WIFE shall have the sole exclusive occupancy of said property until the sale of the marital home subject to the provisions of this paragraph and that HUSBAND shall be responsible for past and present liability for mortgage, any special assessments, insurance premiums, property taxes and any and all other expenses incidental to or related to said property until the date of sale of said property. HUSBAND shall protect, defend, indemnify and save WIFE harmless of, from and against any and all suits, claims, demands, loss, costs, charge and/or expense in any way arising out of HUSBAND'S failure to duly, diligently, and fully pay any of the aforesaid expenses, excluding any acts of negligence or acts of omission on the part of wife, or any occupants of said real estate during WIFE's occupancy, that causes or is shown to be causally related to any of said actions or causes of action.

(Joint Ex.1, 1-8.) Paragraphs 5.2 and 5.3 provide that the adjacent lot shall be immediately listed for sale while the 8220 Crystal Springs Road residence shall be listed for sale after being "brought into salable condition, the cost of which shall be paid by HUSBAND subject to reimbursement" from the sale proceeds. (Id. at 1-8 to 9.) Paragraph 5.3 provides that Miriam shall receive up to $400,000 of the net proceeds from the sale of the marital home and adjacent lot, with any proceeds above $400,000 to be divided 50/50 between Perry and Miriam. (Id.) If the net sale proceeds are less than $100,000, Perry is obligated to pay Miriam the difference between the net proceeds and $100,000 within 3 months, after which interest of 9% *p.a.* will accrue until that sum is paid in full.[2]

Finally, Section 8.4 of the "General Provisions" of the MSA, entitled "BANKRUPTCY," states:

> The parties further acknowledge their intent that the Bankruptcy Court consider any debts established by this Agreement to be in lieu of maintenance, and to consider their repayment as for [sic] form of support payment and a basis upon which the other terms of this Agreement were negotiated. It is understood that the intent of the parties is not binding upon the U.S. Bankruptcy Court, but that the Bankruptcy Court may consider the intent of the parties in determining whether or not to discharge these debts.

(Joint Ex.1, 1-13 to 14.)

---

[2] Perry assumed all joint debts under the MSA.

Perry signed a quitclaim deed that was recorded March 17, 2008, transferring his interest in the Crystal Springs Road property and the adjacent lot to Miriam. (Joint Ex. 5.) Perry has not lived in the property since 2002, but continued to make the mortgage payments until June 2009, after which he made no further mortgage or property tax payments. However, he continues to maintain insurance on the property. Miriam has not made any payments on the mortgage or any property tax payments for the property.

Perry and Miriam were represented by separate counsel in the divorce proceedings who negotiated the terms of the MSA over the course of several days. Perry's divorce attorney testified that the parties believed at the time that the Crystal Springs Road property would sell for between $750,000 and $800,000, and that the provision in the agreement entitling Miriam to the first $400,000 in net equity from a sale was an offset for her interest in a restaurant that Perry was permitted to keep. Perry's divorce attorney also testified that while none of the parties were aware that the property required repairs to the property when they signed the MSA, they later learned of problems including a leaking roof. Additionally, according to Perry's divorce attorney, soon after the agreement was signed the real estate market crashed which affected his ability to sell the property.

Miriam has a high school diploma and attended some college classes but has not obtained a degree. Miriam testified that during most of their marriage she did not work, other than sporadically helping at Perry's restaurant for no pay. Since her divorce, Miriam has found employment at a number of law-wage jobs. She currently works as a server in a restaurant for half the minimum wage plus tips. Perry operates a restaurant he owns, originally formed in 1965 by his mother, which remains successful. The Moys have three sons, currently aged 23, 29 and 30. Since at least 2006, all three sons have lived with Perry.

Both divorce attorneys testified that they considered and discussed Miriam's needs, including housing, when negotiating the MSA. Miriam's divorce attorney testified that the post-sale monthly payment of $6,000 required by the settlement agreement was an estimate of what Miriam would have to pay for similar accommodations in the same area with similar living expenses. He additionally testified that the provisions for direct payments of the mortgage while Miriam was still in the Crystal Springs Road home and for a lesser payment to Miriam during that time were intended to operate together: the agreement required Perry to directly pay the mortgage to ensure that the $3,000 in respect of housing would in fact go towards housing, but when the house was sold the extra $3,000 per month would be paid directly to Miriam. This additional amount, according to her attorney, was intended to be used for housing that Perry previously provided indirectly through his mortgage payments on the Crystal Springs Road home. Perry's divorce attorney testified that he did not believe that it was the parties' intention that Miriam remain in the home for more than a brief period before it would be sold. Miriam's divorce attorney acknowledged that the house was to be sold as soon as practicable.

Before approving the MSA, the divorce court held a prove-up hearing on March 14, 2008. Both Perry and Miriam testified to the state court as to their understanding of the agreement at the hearing.

McHenry Savings Bank commenced foreclosure proceedings on its mortgage on the Crystal Springs Road property in the circuit court on November 27, 2009. Miriam filed a counterclaim against the bank with her answer. Perry apparently has made no effort to contest the foreclosure proceeding and that matter remains pending.

On September 29, 2010, the divorce court held both Miriam and Perry in contempt for violation of the MSA. It ordered Miriam to obtain a comparative market analysis and list the

Crystal Springs Road property for sale within 30 days. Perry was ordered to bring the mortgage current within 90 days. On January 6, 2012, the divorce court found that Miriam had purged her contempt but Perry had not. Perry Moy filed his voluntary petition for protection under Chapter 13 of the Bankruptcy Code on April 20, 2012.

Perry's proposed Chapter 13 plan (ECF No. 158, 12/02/2013) does not provide for priority claims other than his attorneys' fees. However, Section G provides in relevant part:

> 2. The Debtor will continue to make monthly payments of $3,000.00 to Miriam Moy as decreed in the Order of Dissolution of Marriage, and will increase the payments to $6,000.00 per month once the property is sold as outlined in the divorce decree.
>
> 3. The claim of Miriam Moy for $100,000.00 is contingent and unknown at this time and the Debtor will make no payment on this contingent claim until the claim is fully matured as outlined in the divorce decree.
> ...
>
> 5. The Debtor is surrendering his interest in the property commonly known as 8220 Crystal Springs Road, Woodstock, IL; this house is occupied by his ex-wife and is currently listed for sale and is part of foreclosure proceeding. McHenry Savings Bank has a claim on file and has valued the property at $425,000.00. The estimated deficiency claim owed to McHenry Savings Bank is $183,588.67. The bank is to be paid 16% of its claim under the Plan, and the Trustee is to hold $489.57 of each monthly payment for the claim of McHenry Savings Bank and distributed once a deficiency claim is filed.

(ECF No. 158, 12/02/2013.)  Perry estimates that a total of $30,000 will be available to pay general unsecured claims through the plan.  (*Id.*)  He estimates that these claims total $186,971.32, though it is unclear whether this figure includes the expected deficiency claim of McHenry Savings Bank described in paragraph G.  (*Id.*)  McHenry Savings Bank filed an unsecured proof of claim for $608,588.67 with respect to the Crystal Springs Road property.[3] Miriam did not file a proof of claim in Perry's case.

---

[3] McHenry Savings Bank originally filed the proof of claim asserting $450,000 to be secured, but after the Chapter 13 Trustee objected, amended its proof of claim to assert the full amount as unsecured. (Claim 4-2.) McHenry Savings Bank also filed proofs of claims for two separate loans secured by other properties.

An involuntary Chapter 7 case was filed against Miriam on May 16, 2012, which she unsuccessfully contested (Case No. 12-B-81963). Miriam ultimately received a discharge on March 12, 2013. The Chapter 7 Trustee filed a no-asset report on May 28, 2014, and her case was closed on May 29, 2014.

McHenry Savings Bank received relief from the automatic stay and co-debtor stay with respect to the Crystal Springs Road property in Perry's case on August 25, 2014. (ECF Nos. 203, 204, 8/25/2014.)[4] Its foreclosure action remains pending.

Perry testified without dispute that he is current on his monthly payment obligation of $3,000 to Miriam under the MSA. He does not contest that if the Crystal Springs Road property is sold and Miriam is no longer able to live there, his obligation to pay her $6,000 per month under the MSA will constitute maintenance or support. However, Perry disputes Miriam's position that the unpaid mortgage and tax payments on the Crystal Springs Road property constitute a nondischargeable debt to Miriam.

Over several days the court conducted a trial on this issue during which it received exhibits and heard the testimony of Perry Moy, Miriam Moy, Don Brewer (Perry's divorce attorney), Michael Lodemeier (Miriam's divorce attorney) and Nancy Soville (a real estate broker). While on the stand, Miriam admitted that she was still living in the Crystal Springs Road property. Miriam did not present evidence that she had paid or incurred any costs because of Perry's failure to pay the mortgage or taxes other than a potential future loss of the house in foreclosure if the debt remains unpaid.

---

[4] Pursuant to Fed. R. Bankr. P. 4001(a)(3), the orders became effective 14 days later.

## DISCUSSION

A debt owed to a former spouse or a debt to be paid to a third party in the nature of alimony, maintenance or support pursuant to a divorce decree is nondischargeable in bankruptcy. *In re Coil*, 680 F.2d 1170, 1171 (7th Cir. 1982). Section 523(a)(5) excepts from discharge "any debt ... for a domestic support obligation." 11 U.S.C. §523(a)(5). The term "domestic support obligation" means an accrued pre-petition debt owed to or recoverable by a spouse, former spouse or child of the debtor in the nature of alimony, maintenance, or support as established by the applicable provisions of a separation agreement, divorce decree or property settlement agreement. *See* 11 U.S.C. § 101(14A). On the other hand, obligations not in the nature of alimony, support or maintenance may be dischargeable. *Coil*, 680 F.2d at 1171.

An essential element of Section 523(a)(5) is that the debt actually exist. "[T]here are two distinct issues to consider in the dischargeability analysis: first the establishment of the debt itself ... and, second, a determination as to the nature of that debt." *Banks v. Gill Distribution Centers, Inc.*, 263 F.3d 862, 868 (9th Cir. 2001). To answer the question of the dischargeability of a debt "the court must, of necessity, also determine that there is actually a debt owed by the debtor to the creditor." *Edwards v. Sieger (In re Sieger)*, 200 B.R. 636, 639 (Bankr. N.D. Ind. 1996); *see also Salin Bank & Trust Co. v. Seybold*, No. 1:08-CV-70, 2009 WL 377983 at * 3 n.4 (N.D. Ind. Feb. 12, 2009). The determination of whether the debt is in the nature of alimony, maintenance or support is a matter of federal bankruptcy law and not state law. *In re Haas*, 129 B.R. 531, 536 (Bankr. N.D. Ill. 1989). The court must examine the substance of the obligation to make this determination. *In re Maitlen*, 658 F. 2d 466, 468 (7th Cir. 1981). "The critical and principal inquiry is whether the intent of the divorce court and the parties was to provide support or divide marital property and debts." *Anderson v. Walden (In re Walden)*, 312 B.R. 187, 190 (Bankr.

C.D. Ill. 2004).

Here, Perry does not contest his obligation under the MSA to pay Miriam $3,000 per month until the Crystal Springs Road property is sold and thereafter to pay $6,000 per month. Nor does he dispute that this duty is "for a domestic support obligation."[5] Perry testified that he was current on those obligations, and his plan provides for payment of current payments going forward. Miriam does not appear to dispute these contentions.

Instead, Miriam alleges that the monthly mortgage and property tax payments that Perry failed to make constitute a domestic support obligation that is excepted from discharge under sections 523(a)(5) and 1328(a)(2) of the Bankruptcy Code. 11 U.S.C. §§ 523(a)(5), 1328(a)(2).

Courts have found that, at least under some circumstances, an obligation in a marital settlement agreement by a debtor to make mortgage payments on a home in which the ex-spouse is residing may be "in the nature of alimony, maintenance, or support." *See Coil*, 680 F.2d 1170 (affirming bankruptcy court's determination that "hold-harmless clause" in marital settlement agreement was intended "to provide support" for debtor's ex-wife and son); *Anderson v. Walden (In re Walden)*, 312 B.R. 187 (Bankr. C.D. Ill. 2004); *Hyde v. Waters (In re Waters)*, 292 B.R. 907 (Bankr. C.D. Ill. 2003). As an Illinois appellate court recognized in *In re Marriage of LaShelle*, "[p]roviding shelter is an important part of support, especially in the cause before the court where the petitioner could not pay both mortgages on the home." 572 N.E.2d 1190, 1195 (Ill. App. Ct. 1991). Mortgage payments, even if not paid directly to the ex-spouse, indirectly provide shelter when the ex-spouse is residing in the home if the payments serve to protect the right of the ex-spouse to remain in the home. *See Maitlen v. Maitlen*, 658 F.2d 466 (7th Cir. 1981); *Harr v. Harr (In re Harr)*, Nos. 97-B-35027, 98-A-169, 2000 WL 1341402 (Bankr. N.D.

---

[5] Miriam does not ask this court to find this obligation to be non-dischargeable, nor has she filed a proof of claim or presented other evidence to show that Perry has failed to make any of the $3000 monthly payments.

Ill. Sept. 18, 2000). However, courts have recognized that this is a question whose resolution depends on the specific facts presented in the particular case. *See In re Drengacz*, No. 11-B-82339, 2012 WL 5467757 (Bankr. N.D. Ill. Nov. 9, 2012) (determination whether obligation to pay mortgage intended as property division or support depends on facts); *Harden v. Harden (In re Harden)*, 351 B.R. 643 (Bankr. C.D. Ill. 2006) (ex-spouse failed to demonstrate that obligation to pay utility and other debts was in nature of support, but debts were nondischargeable under Section 523(a)(15))[6]; *In re Bishop*, No 08-91619, 2009 WL 996381 (Bankr. C.D. Ill. Apr. 14, 2009) (finding based on specific facts that the hold harmless clause was intended as property division not support); *Lipira v. Kaczmarksi (In re Kaczmarksi)*, 245 B.R. 555 (Bankr. N.D. Ill. 2000) (finding that obligation to pay mortgage in divorce decree was intended as property division not support); *Sterna v. Paneras (In re Paneras)*, 195 B.R. 395 (Bankr. N.D. Ill. 1996) (finding that obligation in marital settlement agreement to pay cosigned debts was intended as property division not support).

The evidence shows that the parties intended and expected that Miriam would only remain in the Crystal Springs Road property temporarily, for a few months, until they could sell the property. The parties intended that the MSA require Perry to provide Miriam with a source of shelter (or similar shelter) rather than to protect Miriam's right to reside in the Crystal Springs Road residence in particular. Miriam was entitled to stay in the Crystal Springs Road residence temporarily as a convenience for both parties until it could be sold and she could find a new place to live.

This intent is recognized by the "step-up provision" in the MSA. Miriam's divorce attorney testified that $6,000 per month was an estimate of Miriam's necessary expenses if she

---

[6] While the court in *Harden* finds the obligation to pay utilities non-dischargeable under Section 523(a)(15), it concludes that since the ex-spouse "has not been required to pay any of these bills, no money judgment will be entered in her favor." 351 B.R. at 650.

found a similar place to live in the same area. The lower initial $3,000 per month payment obligation under the MSA recognized that at least so long as Perry continued to pay the mortgage and taxes, Miriam would not incur any housing costs herself while temporarily living in the Crystal Springs Road property. As Miriam's divorce attorney testified, the payment was to increase to $6,000 after the property was sold, with the extra $3,000 per month from Perry to Miriam to go towards housing which she would then need to procure.

Contrary to parties' initial expectations that Miriam would stay at the house only for a matter of a few months, Miriam has remained in the house for over four years since the approval of the MSA. Miriam has not provided any evidence that she was forced to incur any costs to remain in the Crystal Springs Road property. For example, she does not claim that she has made any mortgage payments in order to remain in the home. *Cf. In re Harr*, 2000 WL 1341402 ("when the Debtor ceased making payments on the mortgages, she had to borrow from third parties in order to remain in the Residence.").

Having failed to demonstrate that she incurred any costs because of Perry's failure to make the mortgage and tax payments or that she was thereby deprived of shelter, Miriam also failed to demonstrate that Perry owes her a debt for the amounts he failed to pay to the bank or county. The MSA contains a hold-harmless and indemnification provision for their real property whereby Perry agrees to "protect, defend, indemnify and save [Miriam] harmless of, from and against any and all suits, claims, demands, loss, costs, charge and/or expense in any way arising out of [Perry's] failure to duly, diligently, and fully pay any of the aforesaid expenses." (MSA ¶ 5.1.) Miriam did not present evidence that she incurred any costs, charges, expenses or loss from Perry's failure to pay the mortgage. Nor did she demonstrate that she will be deprived of shelter if the Crystal Springs Road property is sold at foreclosure. Upon such occurrence the MSA

requires Perry pay her an additional $3,000 per month to obtain alternate housing. Miriam will not be liable for any deficiency judgment to McHenry Savings Bank, since she has already received a Chapter 7 discharge.

The facts in this case bear striking similarity to those presented in *In re Carlsen*. No. 12-B-18047, 2013 WL 1224894 (Bankr. N.D. Ill. Mar. 27, 2013). The court in *Carlsen* disallowed a claim by an ex-spouse for unpaid mortgage and tax payments which a debtor was required to make under a marital settlement agreement. There, as in this case, the parties expected to sell the residence quickly and the ex-spouse was permitted to reside there until the sale. Also as in this case, the Carlsens' initial expectations were not realized and despites the sale price being lowered several times, their residence did not sell. During this entire time Catherine Carlsen continued to reside in the house until, almost five years after his divorce, Scott Carlsen told her he could no longer afford to make the mortgage payments and stopped making them and paying the taxes on the property. *Id.* at *2. The debtor initially made all required payments but eventually stopped after which the mortgage bank commenced foreclosure proceedings.[7] After Scott Carlsen filed a petition under Chapter 13, Catherine filed a proof of claim for the unpaid mortgage payments, claiming that they were entitled to priority status as a domestic support obligation.

The court sustained the debtor's objection to Catherine's proof of claim finding the mortgage payments to be a debt owed to the mortgage bank, not to Catherine. The court determined that Catherine could not prove damages since she was not liable on the note and had not made any payments on the note. 2013 WL 1224894 at *6.[8] Noting that Catherine was not

---

[7] In *Carlsen*, the debtor's ex-spouse was not personally liable on the note secured by the mortgage, but that is the same result here because Miriam has received a Chapter 7 discharge and did not reaffirm the loan. 11 U.S.C. § 524.
[8] On this point Judge Goldgar noted that "Catherine cites no decision in which a non-debtor ex-spouse was held to have a claim for a debtor ex-spouse's unmade mortgage payments under the circumstances." *Id.* Miriam also has not

liable on the note and had not made mortgage payments after the debtor defaulted after the debtor, the court found that Catherine had received "the benefit of the bargain" by living in the house for several months longer than expected without cost. For "her now to receive thirteen months of mortgage payments and a year of real estate taxes as well would be a windfall," the court concluded. *Id.* Here, too, the evidence demonstrates that Miriam has lived in the Crystal Springs Road home for several years longer than expected without cost. Here, too, it is plainly evident that Miriam has received the benefit of her bargain.[9]

That Miriam is not owed a debt in respect of the mortgage and tax obligations under the MSA is an outcome that can be anticipated under Illinois law. Illinois courts have held that an ex-spouse has no standing to enforce an indemnity or "hold harmless" provision in a marital settlement agreement unless the ex-spouse can show an injury to a legally cognizable interest. *See In re Marriage of Hopwood*, 882 N.E.2d 205 (Ill. App. Ct. 2008). In *Hopwood*, the marital dissolution judgment ordered the husband to pay and hold his ex-wife harmless for a certain third-party debt her father had guaranteed. The husband failed to make the payments but the father voluntarily chose to repay the debt to protect his own credit. The ex-wife later brought a contempt action against the ex-husband for his failure to comply with the dissolution judgment. The appellate court denied her relief, holding that "a cause of action on an indemnity agreement does not arise until the indemnitee either has had a judgment entered against him for damages[]

---

suggested any such decision to this court.
[9] As noted above, Ms. Moy does not allege that this obligation is nondischargeable under 11 U.S.C. §523(a)(15). That provision excepts from discharge
> any debt – (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record…unless—(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent…; or (B) discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to the spouse, former spouse, …of the debtor.

Failing to show that Miriam does not have liability on a claim for the nonpayment of the mortgage or real estate tax payments, there is no debt incurred by the debtor under the circumstances presented that brings the payment provision of the MSA within the terms of Subsection (15). See 11 U.S.C. §101(12).

or has made payments or suffered actual loss." 882 N.E.2d at 208 (quoting *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 538 N.E.2d 530, 539 (Ill. 1989)). Because the ex-wife had neither sustained loss nor liability, the court found she lacked standing to enforce the indemnity provision of the dissolution judgment. *Id.*

Miriam has failed not only to demonstrate that she *has* suffered an indemnifiable loss but also to prove that she *will* suffer any such loss in the future. To be sure, "debt" can possess a broader meaning for bankruptcy purposes than for state law appliactions. The term, defined by reference to the term "claim," includes even unmatured and contingent liabilities, such as liability on a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. §101(5), (12). However, when a "contingency on which a claim depends can no longer occur, the creditor no longer has a contingent claim." *Carlsen*, 2013 WL 1224894 (citing *In re Chateaugay Corp.*, 89 F.3d 942, 951 (2d Cir. 1996); *Foothill Capital Corp. v. Official Unsecured Creditors' Comm. of Midcom Communications, Inc.*, 246 B.R. 296, 305 (E.D. Mich. 2000)). Miriam has not demonstrated how she will have any possible claim against Perry under the indemnification provision – or at least a claim that is in the nature of support – now that her personal liability on the mortgage loan has been discharged. While it still remains possible that she will lose possession of the Crystal Springs Road property in the future, she never had any long-term expectancy to remain in the Crystal Springs Road property under the MSA, and she has not contested that Perry will pay her an extra $3,000 for her housing needs when she must leave the Crystal Springs Road property – as contemplated by the MSA.

## CONCLUSION

Miriam Moy has failed to demonstrate that she is owed any debt that is non-dischargeable under 11 U.S.C. §523(a)(5) in connection with the Debtor's obligation to make mortgage and property tax payments under the parties' Marital Settlement Agreement. Accordingly, judgment will be entered in favor of the Debtor-Defendant Perry Moy. A separate judgment order shall be entered concurrently with this opinion and this adversary proceeding will be DISMISSED.

DATE: April 3, 2015          ENTER:          _____

Thomas M. Lynch
United States Bankruptcy Judge